*M. C. Edwards* and *Smith & Miller,* contra.

------

## LAWSON *et al. v.* GEORGIA SOUTHERN AND FLORIDA RAILWAY COMPANY; *et vice versa.*

1. A grantor conveyed to a railroad company two adjacent parcels of land "to have and to hold said parcels of land to said railroad, their assigns, for railroad purposes only, and for the time that they shall so use it." The estate therein created was for railroad purposes only, with the limitation that the estate conveyed would cease and determine when the railroad company failed to use the premises for railroad purposes within a reasonable time, or, having put the premises to the use specified, should thereafter abandon the property for railroad purposes. Upon its determination, the estate conveyed would revert to the grantor or his heirs.

2. In order to effect a forfeiture of the whole estate, where a substantial part of the land is used for the purposes specified and a part of it is used for another purpose, there must be a total destruction of the whole estate of the grantee. If the land is partly used for the object of the grant, and partly for another purpose, the whole estate will not be destroyed unless the limitation of the grant requires such result. The

terms of the limitation in the deed sub judice do not totally destroy the estate so long as the railroad company uses the land for railroad purposes, though it may put some of it to a use designed to increase its railroad business, though such use may not be accessorial to a strict railroad use.

3. The facts considered, and it is held that it was not erroneous to direct a verdict for the defendant.

JUNE 15, 1914.

Complaint for land.    Before Judge Thomas.    Lowndes superior court.    July 15, 1913.

On May 5, 1890, W. W. Lawson executed to the Georgia Southern & Florida Railroad Company a deed, the material parts of which are: "Witnesseth that the said party of the first part, for and in consideration of the location of a depot at Hahira, at and before the sealing and delivery of these presents, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said party of the second part, and assigns, all the following described property, to wit: Block number nine (9) and ten (10) in the Town of Hahira, according to the plot of said town made by the surveyor of said road. To have and to hold said parcels of land to said railroad, their assigns, for railroad purposes, only, and for the time that they shall so use it." Each of the lots is 100 feet by 400 feet, and they are contiguous to the railroad company's lot on which is located its depot. The grantor died in 1899, and his heirs at law brought suit in 1912 to recover the premises and for the cancellation of their ancestor's deed. They alleged, that, notwithstanding the land was granted to the railroad company "to have and to hold said parcels of land to said railroad, their assigns, for railroad purposes only, and for the time that they shall so use it," the defendant had never used or appropriated the premises or any part thereof for railroad purposes; that the defendant had leased various portions of the land to different individuals for private use, and not for railroad purposes; that, the defendant company having failed within a reasonable time to use the property for railroad purposes, and having leased it to divers individuals for private gain and profit, the condition limiting the estate has happened; and the estate conveyed by the deed being at an end, the title thereto and right to possession thereof is in the plaintiffs. The defendant, by demurrer to the petition, challenged the construction put upon the deed by the

plaintiffs. The demurrer was overruled. Both sides submitted evidence, and the court directed a verdict for the defendant. The plaintiffs moved for a new trial, which being refused, they excepted. The defendant complains, by 'cross-bill of exceptions, of the overruling of its demurrer.

*Patterson & Copeland,* for plaintiffs.

*J. E. Hall* and *E. K. Wilcox,* for defendant.

EVANS, P. J. (After stating the foregoing facts.)

1. The habendum clause of the deed was: "To have and to hold said parcels of land to said railroad, their assigns, for railroad purposes only, and for the time that they shall so use it." If the grant had been to the railroad company or its assigns "for railroad purposes only," with no words of reverter or of limitation, the deed would pass the fee. The phrase "for railroad purposes only" in such a case would be merely a declaration of the purpose for which the land conveyed was intended to be used. *Tift* v. *S., F. & W. Ry. Co.,* 103 *Ga.* 580 (30 S. E. 666); *Thompson* v. *Hart, 133 Ga.* 540 (66 S. E. 270); McElroy *v.* Pope, 153 Ky. 108 (154 S. W. 903, 44 L. R. A. (N. S.) 1220). In such case there would be no reversion, because "an estate in reversion is the residue of an estate, usually the fee left in the grantor and his heirs after the determination of a particular estate which he has granted out of it." Civil Code, § 3674. But there are the superadded words, "and for the time that they shall so use it." The whole of the habendum clause must be considered and given effect, in order to find out the intent of the parties to the deed. A similar deed was before this court in *Atlanta Con. St. Ry. Co.* v. *Jackson,* 108 *Ga.* 634 (34 S. E. 184). In that case the deed of the grantor, conveying to the street-railway company the title to a right of way over his land, contained this habendum clause: "To have and to hold so long as the party of the second part . . uses the said right of way . . for all legitimate railroad purposes as herein set forth, and no other." It was held that the habendum clause did not constitute a covenant, but was a conditional limitation, and that the land reverted to the grantor when the company abandoned the right of way.

The habendum clause in the deed under discussion contains words of limitation rather than of condition. The distinction between an estate on condition and a limitation which determines the estate upon the happening of an event is thus drawn in *Norris* v. *Milner.*

20 *Ga.* 563: "A limitation in a deed determines the estate when the period of limitation arrives, without entry or claim. But a condition does not defeat the estate, although it be broken, until entry of the grantor or his heirs." Where a deed contains a limitation, the estate determines upon the happening of the event upon which it is limited, and, if the limitation is not to another, goes over to the grantor or his heirs by reverter without necessity of re-entry. Says Agnew, J., in Henderson *v.* Hunter, 59 Pa. St. 335: "A special limitation may be created by the words 'until,' 'so long,' 'if,' 'whilst,' and 'during,' as when land is granted to one so long as he is parson of Dale, or while he continues unmarried, or until out of the rents he shall have made 500*l.*: 2 Black. Com. 155; Smith on Exec. Int. 12; Thomas Coke, 2 Vol., 120-121; Fearne on Rem. 12, 13, and note p. 16. 'In such case,' says Blackstone, 'the estate determines as soon as the contingency happens (when he ceases to be parson, marries a wife, or has received the 500*l.*), and the subsequent estate which depends on such determination becomes immediately vested without any act to be done by him who is next in expectancy.'" In the case of a limitation on the fee, styled by some judges and law-writers as a base or determinable fee, the condition of the limitation, or the circumstances upon the existence of which the estate depends, enters into the limitation itself, becomes an integral part of the estate created, and when the state of affairs upon the continuance of which the estate is conditioned and limited comes to an end, the estate itself ipso facto ceases. Vide 4 Kent's Com. 129.

In the case of *Mayor etc. Macon* v. *East Tenn., Va. & Ga. Ry. Co.,* 82 *Ga.* 501 (9 S. E. 1127), the General Assembly granted to the railroad companies certain land in the City of Macon, "to be used by said railroad companies for depots, shops, and other conveniences and fixtures necessary for said railroad companies (the assent of the city council of Macon being first had thereto), upon such terms, conditions, and limitations as shall be agreed upon between the city council of Macon and said railroad companies." The City of Macon assented that the land "be granted so long as the premises are used by the companies for the purposes set forth in the act of the legislature." The only consideration of the grant was the local benefits which might be expected to result from the use of the premises in the manner contemplated. One of the railroad com-

panies to which the grant was made became bankrupt, and its property rights were purchased by another company. It was contended by the city that the property was no longer used by the railroad company for the purposes specified in the grant. The city brought an action to recover the land; and the court held, that when the company accepted the grant it was with the limitation that the estate was to exist so long as the property was used for the purposes specified in the statute; that such limitation is distinguished from an ordinary condition subsequent, inasmuch as it marks the limit beyond which the estate conveyed could not continue to exist. It was further held that if a reasonable time had elapsed before the assets of the original grantee company were seized and sold out, that company had lost the grant, and the premises were not its property at the time of the sale; but if a reasonable time had not elapsed, the purchasing company would be entitled to any additional time required, when added to the time already elapsed when it succeeded to the former company's rights, to complete the period.

Construing the deed in the light of the foregoing authorities, the premises were conveyed to the railroad company to be used for railroad purposes only, with the limitation that the estate conveyed should cease and determine should the railroad company fail to use them for railroad purposes within a reasonable time; or, having put them to the use specified, if it should thereafter abandon the use of the property for railroad purposes, the estate conveyed would revert to the grantor or his heirs.

The case of *Thornton* v. *Trammell, 39 Ga.* 202, is cited as sustaining the proposition that the habendum clause contains words of covenant and not of limitation on the estate granted. In that case a fee-simple estate was granted; the land being conveyed "unto the said George W. Crawford, and his successors in office, and to their assigns forever." Just after the description of the property these words were inserted: "It being expressly understood by the parties that the said tract or parcel of land is not to be put to any other use than that of a depot square, and that no business or improvements are to be put on the said tract but that which is immediately connected with the Western and Atlantic Railroad." The court held that the conveyance was an unqualified grant of the land, and that the language quoted was but a restrictive covenant; a breach of which was remediable in damages. It will be seen, how-

ever, that the words of limitation in the present case are in the habendum clause, and constitute and limit the estate conveyed.

2. It may be contended that the grant created an estate for "railroad purposes only," and that although a part of the premises may be used for railroad purposes, yet as another use is also made of the premises, the grantor's heirs could claim the whole estate under his right of reverter. In order to effect a reverter of the whole estate, where part of the land is used for the purposes specified in the grant and part of the land is used for another purpose, there must be a total destruction of the whole estate of the grantee. Where land is conveyed to be used for a certain purpose, with a clause of forfeiture if it cease to be used for the object specified, the whole estate does not cease if the land is used for other purposes, provided it is also used for the purpose for which it was conveyed. McKelway v. Seymour, 29 N. J. L. 321; Bolling v. Petersburg, 8 Leigh, 224.

More latitude of construction is given to avoid a destruction of an estate, in determining what use is accessorial to railroad purposes, than in deciding what use would be for a railroad purpose in a statute exempting from taxation property used for railroad purposes only. The reason for this is apparent. No act will be construed to work the destruction of an estate, unless the language of the grant to that effect be clear. On the other hand, all property should bear its proper burden in the support of governmental functions, and statutory tax exemptions will not be extended beyond the clear import of the exemption in the statute.

The plaintiffs' title rests upon the foundation that the qualified estate in the land conveyed to the railroad company by their ancestor has totally failed and determined. So long as the railroad company uses a substantial portion of the land for railroad purposes, a total destruction of the estate will not result from another use which does not destroy or interfere with the use for which the estate is granted, unless the words "for railroad purposes only" are to be construed not only as excluding every other use of the premises but as implying a forfeiture if not used exclusively for railroad purposes. We do not think the parties intended a cessation of the entire estate if part of the premises was used for railroad purposes and another part was temporarily used for another purpose which did not interfere with the use restricted in the grant. When the

deed was executed the railroad of the defendant was in process of construction through a territory which previously had no railroad facilities. The grantor was desirous of having the railroad company establish a depot at Hahira, and the land was conveyed as auxiliary to accomplishing that result. We do not think that the grantor's purpose was to require that so much of the premises as was not required for immediate railroad use was to remain vacant. But rather his purpose seems to have been to convey the land for permanent railroad use so long as the railroad put it to that use; and that upon its abandonment for railroad use the estate was to cease and determine. If the railroad company did not use the premises for railroad purposes within a reasonable time, or, after using it for railroad purposes, abandoned the use thereof, the estate granted would cease and determine; but so long as the railroad company uses the land for railroad purposes, its license to others to use a part of it for a purpose of increasing its business, though not strictly an accessorial railroad use, will not work a total destruction of the estate granted.

3. The court directed a verdict for the defendant. No tracks were ever constructed on the premises, but there was no controversy that the same had been used continuously since the execution of the deed as an area-way for approaching the depot with wagons employed in loading and unloading freight. It also appeared that the premises had been used by the railroad company for several years for the purpose of storing lumber, preparatory for shipping it, but had not been so used for the past three years. One of the plaintiffs testified: "This property from the time the depot was built was used as a passageway from the depot on down. In going to the east end of the freight-depot with a wagon it is necessary to pass over a strip of this property. Ever since the depot was built they have been using it in this way." Another of the plaintiffs testified: "In getting to and from the depot from Main street and other streets for the purpose of hauling freights it is not necessary to pass over this land we are suing for." Nevertheless he does not deny, nor does any other witness deny, that the premises were used as an area-way in approaching the depot for the purpose of receiving and discharging freight.

One of the lots at the time of the conveyance was covered in great part by a pond of standing water. Some of it, which was not

needed for strict railroad use, was leased to others. These leases were for short terms, and some of them have expired. The evidence disclosed no intention by the railroad company to permanently abandon the property or any of it. Some of the purposes for which the leases were made were apparently accessorial to the railroad use. *L. & N. R. Co.* v. *Maxey,* 139 *Ga.* 541 (77 S. E. 801) ; Grand Trunk R. Co. *v.* Richardson, 91 U. S. 454 (23 L. ed. 356) ; Illinois Central R. Co. *v.* Wathen, 17 Ill. App. 582. In one or more instances, however, the use of the property rented was not accessorial, but, under the rulings which we have made, it becomes immaterial to take up each of the leases and discuss its character. It was shown by the evidence that the company was continuously using a substantial part of the property for strictly railroad purposes. The burden was on the plaintiffs to show a total destruction of the estate granted by their ancestor to the railroad company, by reason of the limitation upon the use of the property. They failed to do this, and it was not error to direct a verdict for the defendant.

*Judgment affirmed on both bills of exceptions. All the Justices concur, except*

ATKINSON, J., dissenting. The estate was granted "to have and to hold said parcels of land to said railroad, their assigns, for railroad purposes only, and for the time that they shall so use it." This was not the grant of an absolute estate to be forfeited upon a condition broken, but was the grant of a particular estate limited as to the time of its enjoyment. Properly construed, the estate was exclusively for railroad purposes—to be enjoyed only so long as the property should be used exclusively for railroad purposes. The grant does not authorize the use of any of the property for other than railroad purposes, or subsist for any purpose where a substantial part of it is used for other than railroad purposes. The estate should be held to have terminated, it appearing that a substantial part of the property was diverted to unauthorized uses. Except as here indicated there is no dissent from the decision of the majority.